**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

**vs.**                                          **3:05cr112/RV
3:07cv533/RV/MD**

**ANTOINETTE DOLORES ROCAMORA**

---

**REPORT AND RECOMMENDATION**

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255  (doc. 52).  The government has filed a response (doc. 57) and the defendant did not timely file a reply, despite having moved for and been granted an extension of time in which to do so.  (Doc. 59 & 60). On July 11, 2008, this court entered a recommendation that the defendant's motion be denied.  (Doc. 62).  On July 25, 2008, the clerk docketed defendant's motion to correct court administrative error and to extend time to file report objections (doc. 63) and a copy of her reply to response that had purportedly been filed on April 24, 2008, but had never been received by the court.  (Doc. 64).  After review of these documents, the undersigned vacated the original report and recommendation.  In addition, noting that the defendant's arguments had been so brief as to have been virtually incomprehensible in her initial motion, it directed the government to respond to the defendant's reply, which set forth her arguments in much greater detail. (Doc. 65).  The government has now filed its response to the reply (doc. 66), and the matter is again referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a

**careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.**

**I. BACKGROUND**

**Defendant was charged in three separate criminal cases with a total of five counts of bank robbery.  Case 3:05cr112, 3:05cr127, 3:05cr137.[1]  The robberies were committed within a one month period between August 24, 2005 and September 23, 2005. (Doc. 29, at 18-25, PSR, ¶ 11).  The specific facts surrounding the offense conduct are set forth in the PSR and in the appellate brief, and need not be repeated herein.**

**Defendant entered into a written plea and cooperation agreement. (Doc. 15). Pursuant to this agreement, she pleaded guilty to count one of the indictment in the above-styled case, to each count of the three count information filed in case 3:05cr127, and to a single count information file in case 3:05cr137.  The agreement provided that with respect to each of the five charges, defendant faced up to 20 years imprisonment, up to five years supervised release, a $250,000.00 fine, a $100.00 special monetary assessment and would be required to pay restitution to each of the victims.  (Doc. 15 at 3).  The agreement further provided that the sentence to be imposed was left solely to the discretion of the district court, which would fashion a sentence within the statutory mandatory and minimum after consulting the U.S. Sentencing Guidelines.   (*Id.* at 4).**

**The district court accepted defendant's guilty plea to the charges after conducting two separate plea colloquys, the first to the charges in the Florida cases, the second for the charge in the Alabama robbery.  (Doc. 28 & 33).**

---

[1]The latter case was initially filed in the Southern District of Alabama, where one of the robberies occurred, but jurisdiction was transferred to this court.

A PSR was prepared, which reflected that defendant's combined adjusted offense level was 30.[2]  Because she was a career offender pursuant to §4B1.1 due to two prior burglary offenses (PSR ¶¶ 92 & 97), which were considered "crimes of violence," her offense level became 32.  (PSR ¶ 84).  Defendant received a three level adjustment for acceptance of responsibility, which reduced her total offense level to 29.  (PSR ¶ 85).  As a career offender, defendant's criminal history category was automatically VI.[3]  (PSR ¶ 100).

Sentencing was also conducted in two parts.  At the first hearing, the court expressed concern about whether the two burglary offenses identified in the PSR were properly considered for career offender status, that is, whether there was an intervening arrest.  (Doc. 34 at 2-5).  Sentencing was continued for the parties to further investigate this issue.  When the court reconvened, it determined that an intervening arrest had occurred, and as such both offenses were countable.  (Doc. 35 at 6).  The court overruled the defense objection to the adjustment for the threat of death made during the course of the robberies.  (Doc. 35 at 13-14).  Defendant was sentenced to a term of 156 months imprisonment in case 3:05cr112, 160 months as to each count in case 3:05cr127, and a term of 156 months in case 3:05cr137, with each sentence to run concurrently.  (Doc. 35 at 22).  The court also directed defendant to participate in the residential drug abuse  program in the Bureau of Prisons, to pay a special monetary assessment of $500, and to pay restitution in the amount of $6912.00.  (*Id.* at 23).

After filing a notice of appeal, counsel filed an *Anders*[4] brief.  (Doc. 50).  The Eleventh Circuit's independent examination of the entire record revealed no arguable

---

[2]Because the offenses involved different victims and addressed different harms, they could not be grouped together pursuant to the grouping rules in §3D1.2(a)-(d), U.S.S.G. (PSR ¶ 37).

[3]Absent the career offender classification, her criminal history category would have been IV.

[4]*Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

issues of merit.  It granted counsel's motion to withdraw, and affirmed defendant's conviction and sentence.  (Doc. 50).

In the instant motion, defendant claims that counsel was constitutionally ineffective, that her pleas was "unknowing," that she did not receive an acceptance of responsibility adjustment, that her prior convictions were erroneously calculated, leading to an increase in her guidelines range, and that one of her prior convictions should not have been counted as a violent crime.  The government argues that defendant's claims are procedurally barred or without merit, and that to the extent she attempts to raise additional claims in her reply brief, they are untimely.

## LEGAL ANALYSIS

### Timeliness

Title 28 U.S.C. § 2255(f) imposes a one year time limitation on the filing of motions under this section. The one year period of time runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the petitioner was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).   In this case, the Eleventh Circuit issued its mandate affirming the defendant's conviction and sentence on December 21, 2006.  (Doc. 50; *United States v. Rocamora*, 206 Fed.Appx. 945 (11th Cir. 2006).  Defendant did not file a petition for writ of certiorari within ninety days, and therefore her conviction became

final on March 21, 2007.  *Clay v. United States,* 537 U.S. 522, 123 S.Ct. 1072, 1073 (2003).  The defendant therefore had one year from that date to file her § 2255 motion.  Her original § 2255 motion was timely filed on December 19, 2007.  Her reply, in which she attempts to raise multiple new claims bears a certificate of service dated April 24, 2008 (although the court did not receive and docket a copy of this pleading until July 25, 2008).  In either event, any new claims raised in her reply are untimely.

Any new amended claims may be considered on their merits only if they relate back in time to the initial petition.  In *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000); *cert. denied*, 121 S.Ct. 1232, 149 L.Ed.2d 141 (2001), the court held that in order to relate back, claims in an amended or supplemental § 2255 motion must arise from the same set of facts as the original claims, not from separate conduct and occurrences in both time and type.  *See also Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003); *Dean v. United States*, 278 F.3d 1218 (11th Cir. 2002); *United States v. Espinoza-Saenz*, 235 F.3d 501, 503-05 (10th Cir. 2000); *United States v. Pittman*, 209 F.3d 314 (4th Cir. 2000); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999); *United States v. Duffus,* 174 F.3d 333, 337 (3rd Cir.), *cert. denied*, 528 U.S. 826, 120 S.Ct. 163, 145 L.Ed.2d 138 (1999).  Claims of ineffective assistance of counsel which arose from separate conduct and occurrences in both time and type do not relate back.  *Davenport*, 217 F.3d at 1346; *Farris; Dean; supra*.  Likewise, new claims alleging different trial errors are not part of the same course of conduct and will not relate back.  *Id.*  Thus, any "new" claims raised in defendant's reply to the government's response will not be considered except with respect to any arguments that can be said to relate to the claims raised in her initial motion.

*Case No: 3:05cr112/RV; 3:07cv533/RV/MD*

**General Legal Standards**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice.").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

A motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United*

*States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."   *Lynn,* 365 F.3d at 1234; *Bousley,* 118 S.Ct. at 1611 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."   *Lynn,* 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause.  *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  *Peoples v. Campbell*, 377

F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.


**Ground One: Ineffective assistance of counsel**

Defendant first contends that counsel was ineffective because he did not tell her that she would be ineligible for the one year reduction in her sentence for satisfactory completion of the BOP's residential drug abuse treatment program authorized by 18 U.S.C. § 3621(e) and implemented by 28 C.F.R. § 550.58.  To show a violation of her constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that she was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,*  494 F.3d 997, 1002  (11th Cir. 2007).  "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry her burden on either of the two prongs.  466 U.S. at 697, 104 S.Ct. at 2069.

In this case, defendant asserts that she "was told she was eligible for the reduction" although she does not say who told her or when.  She does not say that the misinformation about her eligibility induced or influenced her in any way to enter her guilty plea, nor could she make such an assertion in the face of her sworn statement during the plea colloquy that no other promises of any sort had been made in order to get her to plead guilty.  (Doc. 33 at 28).  A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings.

***Blackledge v. Allison,*** **431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977);**
**cf. *Holmes v. United States*, 876 F.2d 1545, 1550 (11ᵗʰ Cir. 1989) (trial court satisfied**
**itself during Rule 11 colloquy of voluntary and understanding nature of plea).**
**Solemn declarations made under oath in open court carry a strong presumption of**
**verity.  *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629*; United States v. Medlock*, 12**
**F.3d 185, 187 (11ᵗʰ Cir. 1994)*.*   They are presumptively trustworthy and are**
**considered conclusive absent compelling evidence showing otherwise. *Blackledge,***
**431 U.S. at 73-74, 97 S.Ct. at 1629.   The record in this case contains no indication**
**that defendant's plea was anything other than knowingly, freely and voluntarily**
**made. Defendant's conclusory allegations of ineffective assistance are insufficient**
**to satisfy the *Strickland* test.   *Wilson v. United States,* 962 F.2d 996, 998 (11ᵗʰ Cir.**
**1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11ᵗʰ Cir. 1991); *Stano v. Dugger*, 901**
**F.2d 898, 899 (11ᵗʰ Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629);**
***United States v. Ross*, 147 Fed.Appx. 936, 939 (11ᵗʰ Cir. 2005).**

**Ground Two: Unknowing plea**

**Defendant contends that her Fifth Amendment rights were violated because**
**her plea was not knowing, since she was misadvised of the consequences of her**
**plea. In her initial motion, she did not explain what "misadvice" she received.  In her**
**reply she asserts that counsel was ineffective because his failure to advise her of**
**the likelihood that she would be sentenced as a career offender or to advise that she**
**would not be eligible for the RDAP program "impacted her plea analysis" and**
**prevented her from fully understanding the consequences of her plea.   Defendant's**
**Fifth Amendment claim is procedurally barred due to her failure to raise this claim**
**on appeal.  And, even if the court accepts defendant's new ineffective assistance of**
**counsel claim as not being time-barred, she has not met her burden of showing a**
**violation of her constitutional rights.   The district court's thorough plea colloquy**
**establishes that she was fully informed of the potential consequences of entering**

a guilty plea, and her vague allegations do not entitle her to relief.  *United States v. Stitzer,* 785 F.2d 1506, 1514, n.4 (11ᵗʰ Cir. 1986) ("[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely.") (quoting *United States v. Barrett,* 514 F.2d 1241, 1243 (5ᵗʰ Cir. 1975)).  Additionally, this issue is procedurally barred due to her failure to raise it on direct appeal.

**Ground Three: Acceptance of Responsibility Adjustment**

Defendant contends that she did not receive a three level reduction pursuant to U.S.S.G. § 3E1.1.  This claim is factually incorrect as the record reflects that she <u>did</u> receive the appropriate adjustment.  (PSR ¶¶ 33, 35, & 82).  Clearly there is no basis for relief on this claim.

**Ground Four: Erroneous calculation of prior convictions**

Defendant's next claim is that her prior convictions were erroneously counted, therefore improperly placing her above the recommended Guidelines range.  She states that her priors "should have placed her at a level 27 and not a level 31."  As set forth in her original motion, defendant's claim appeared to be procedurally barred, vague, and to the extent it could be discerned, factually unsupported.  It was not defendant's prior convictions that established her offense level, except to the extent that the career offender provision, § 4B1.1, applied to her case.  Pursuant to that provision her offense level was 32, but was reduced to 29 due to the acceptance of responsibility adjustment.  Without the career offender enhancement, defendant's total offense level would have been 27.

In her reply, defendant provides additional detail about the criminal activity she engaged in while living in New Hampshire, the subsequent sequence of events, and the reasons she believes career offender status was inappropriate in her case. (Doc. 64 at 2-3).  She admits that she forged the names on checks that were stolen

by another person, and on one occasion stole the checks herself.  She states that she was arrested on or about January 1990 as a result of this conduct and kept in New Hampshire state prison in Goffstown, New Hampshire, unable to meet the high bond in her case.  Defendant explains in her declaration that it is the practice in New Hampshire to hold pre-trial detainees in state prisons.  (Doc. 64, exh. 1 at 1).  According to the defendant, she "believes" she remained in custody "from the beginning of 1990 through mid 1992."  (Doc. 64 at 2).  She explains that she was arrested several times during this period of incarceration when the stolen or forged checks came in through various local jurisdictions.  Each time this happened, defendant would be taken from the state prison to a local magistrate for booking and arraignment and then returned to state custody, but she "never left Goffstown" until mid 1992 upon completion of her sentence on all of the charges, which had been consolidated into three cases.  (Doc. 64 at 3).

The critical question in this case in calculating career offender status is whether this prior offense conduct was separated by an intervening arrest, i.e. whether defendant was arrested and released and then continued to engage in unlawful activity, or whether the earlier convictions were all part of the same offense conduct.[5]  According to defendant's recollection of events, she was in continuous custody from January of 1990 through 1992, and was re-arrested each time another stolen check was discovered, such that the "intervening arrests" had no probative value with respect to determining her custodial status.  Defendant claims that she wrote to the Goffstown facility to obtain her records, and that state records there could verify her statement.  She indicates that at the time she filed her § 2255 reply she had not received a response from the facility, but that she would forward the records as soon as she received them.  (Doc. 64 at 5).  Although over five months

---

[5]According to §4B1.1 of the sentencing guidelines, the defendant is considered a career offender because she was at least 18 years old at the time the instant offense was committed, the instant offense is a felony crime of violence, and the defendant has at least two prior felony convictions of a crime of violence. (PSR ¶¶ 92 & 97).

have elapsed since her reply was purportedly filed, defendant has forwarded no such records to the court.

At the second sentencing hearing, this issue was discussed at some length. Defense counsel explained that:

> This particular issue the court raised about the intervening arrest I still believe is up in the air.  I know the addendum filed by Mr. Constantakos indicates that there was a robbery and then a forgery case, and then another robbery, which would indicate that she were (sic) out of custody at that time, although, I'm not satisfied that that's the case. And the reasons are this:  She indicated to me that once the first burglary was charged, that it was considered a serious crime and a high bond, and that she did not get in a release status after that.  She said her family was all in Florida, they couldn't help her on release.  She was separated from her husband and he didn't care to help her get out of jail.  And she believes that she was in jail from the first robbery continuously.  And I would say to the court that in credit card cases, check cases, forgery cases, it's not uncommon for law enforcement to work a case, checks or whatever coming through the bank, sometimes after maybe they were uttered or issued, and become a date of the offense, which this intervening forgery could be while she was still in custody.

(Doc. 35 at 3).  Counsel further indicated his opinion that defendant's situation could be one where all of the offense conduct could have been part of a single wrongdoing, such that it should not have been classified as separate offenses for career offender purposes. Although he presented this for speculation, he admitted that he was not certain.  (*Id.* at 4). Counsel noted that he had:

> been making phone calls to lots of different people.  And I finally found the court records in the basement of the courthouse.  They've got a new courthouse in a different city, that they have moved the records from the old courthouse.  It's just a long story.  But I've not been able to decipher whether she was in custody and that there indeed was an independent arrest, an intervening arrest.
>
> Another thing, there is no indication of any bond being set or her making bond.  And I – I'm in the process of finding out whether she actually made bond, if there are any records to that effect, which I think is extremely important, to show that she was, indeed, out after that first

burglary.  And we don't have that information, whether she bonded out or not.

(*Id.* at 4-5).   The court stated that it inferred from the records and timing of events that the defendant had bonded out, an inference that counsel argued was not necessarily supported by the record because defendant did not have to be out in order to have been arrested.  (*Id.* at 5-6).  The court denied counsel's request for a continuance to do further investigation.  (*Id.* at 6).

AUSA Hensel stated on the record that the first of the two offenses in question was committed in 1989 and the second, a burglary, was committed in April of 1990. (*Id.* at 7). He argued that defendant must have been released in order to have committed the burglary in April after her January arrest.  The court noted then, that there were actually three offenses that counted towards career offender status. (Doc. 35 at 8)

Finally, defense counsel presented the possibility that defendant was being held accountable for a burglary committed by a male friend of hers while she was incarcerated.  (Doc. 35 at 9).  The court acknowledged that this could be true, but advised that its ruling was the same, and defendant was classified as a career offender for sentencing purposes.  (*Id.* at 9-10).

Assistant United States Attorney Lennard B. Register, III, states in the government's supplemental response to defendant's § 2255 motion that he contacted defendant's trial counsel, Assistant Federal Public Defender Robert Dennis by email on September 13, 2008 to inquire whether he or his office had received any records suggesting that the defendant was wrongly sentenced as a career offender.  On September 17, 2008, Mr. Dennis responded that his office had "received nothing since the sentencing hearing" that would help the defendant, ie. nothing to support the speculative arguments he raised at sentencing in his client's behalf.

Mr. Register also represents in his supplemental response that he personally spoke to Cindy Compton, the official in charge of the Offender Records Office for the New Hampshire Department of Corrections in Concord on September 26, 2008. Although he did not submit an affidavit from Ms. Compton, he sets forth the nature and substance of their communication.  Mr. Register asked Ms. Compton to search for commitment records reflecting periods of incarceration for Antoinette Dolores Rocamora or Antoinette Dolores Stephan.  Ms. Compton reported that inmate Rocamora/Stephan was at Goffstown State Prison for Women for three different commitments: 12/11/90-7/24/92; 12/6/93-4/22/97; and 3/18/03-4/9/03.  Ms. Compton stated that records showed that when Rocamora began her first period of incarceration on December 11, 1990, she had 242 days credit for time served. However, Ms. Compton stated that records would not reflect whether this time served had been continuous prior to Ms. Rocamora's arrival at Goffstown, or a compilation of several periods of incarceration before sentencing which had been interrupted by periods of time out on bond.  In any event, Ms. Compton advised that the New Hampshire Department of Corrections had no records which supported defendant's claim that she was at Goffstown continuously from January of 1990 through June of 1992, as Ms. Rocamora asserted in her declaration.  (Doc. 64, exh. 1 at 3).  Even the 242 days of time-served credit does not prove defendant's claim, as there are more than 242 days between her January arrest and the beginning of her sentence in December of 1990.

The government notes that although the defendant has sworn her declaration to be true, "there is serious reason to question her credibility and/or memory." (Doc. 66 at 9).  As proof thereof, it points to a statement made by defendant at sentencing that she did "not fully recall all of [her] actions."  (Doc. 43 at 16).  This comment appears to have been  directed towards her offense conduct in the instant case, not a general concession of a faulty memory.  The government also points to defendant's factually erroneous assertion that she was denied an acceptance of

responsibility adjustment pursuant to U.S.S.G. § 3E1.1.   While defendant's contention was clearly inaccurate, it is not entirely unusual for defendants to make factual errors or misrepresentations in their § 2255 motions.  Finally the government notes that defendant claims in her declaration that she did not understand that she "could raise [her] own issues with the appeals court directly," (doc. 64, exh. 1 at 5), although she was informed of that by both counsel's *Anders* brief and a letter from the Eleventh Circuit, both of which were sent to the defendant.  (Doc. 66, exh. 1).

Even ignoring the procedural bar, regardless of whether defendant's credibility is assailed, it remains true that her bald assertion that she was continuously incarcerated at Goffstown from January of 1990 through June of 1992, which is a necessary underlying premise for her claim, has not been proven. Defendant's representations to the contrary, AUSA Register's contact with the New Hampshire Department of Corrections about what that state's records reflect weighs against the defendant.  Defendant's trial counsel advanced numerous arguments in her behalf and attempted, albeit unsuccessfully, to secure a second continuance so he could further investigate this issue.  Well over two years later there is no documentary evidence to support defendant's claim.  And, to the extent the court accepts defendant's attempt to frame this issue in terms of ineffective assistance of counsel, counsel is not constitutionally ineffective for failing to prove something that cannot be proven.  Having failed to show that she was incarcerated during the time she claims, she has failed to prove that the career offender status was improperly applied to her, and she is not entitled to relief.

### Ground Five: Burglary as crime of violence

Defendant was classified as a career criminal due to two prior convictions for burglary.  She claims that one of her burglary convictions was not a "violent crime" and hence should not have been counted as a qualifying offense.  This issue is both procedurally barred and without merit.

Defendant states that burglary is a generic offense under the law of New Hampshire where the conviction in question occurred, and that under New Hampshire law it is not a crime of violence to burglarize a place of business or a non-residential dwelling.  She argues that the burglary of the Nashua Swim & Tennis Club, therefore, could not be counted as a crime of violence for purposes of assigning her career offender status.  Defendant's assertion that the burglary of the NSTC was used to qualify her for career offender status is factually mistaken.  That burglary was listed in paragraph 98 of the PSR.  The two career-offender qualifying offenses were in paragraphs 92 and 97 respectively, and involved burglaries of private residences.  Even if she were correct about the definition of burglary under New Hampshire law, she would not be entitled to relief because the conviction in question was not involved in the career offender determination, a fact that was also determined by the court at sentencing.  (Doc. 35 at 9-10).

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 52)  be DENIED.

At Pensacola, Florida, this 6th day of October, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**